Case 1:20-cv-00160   Document 94   Filed on 05/24/21 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
May 24, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARTIN GASCA & | § | |
| JOSE SALVADOR FLORES, JR., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:20-cv-160 |
| | § | |
| OMAR LUCIO, et al., | § | |
|     Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On September 18, 2020, Plaintiff Martin Gasca sued nine defendants as part of a prisoner civil rights lawsuit. Dkt. No. 1.

On November 5, 2020, Plaintiff Jose Salvador Flores, Jr., sued thirteen defendants[1] as part of a prisoner civil rights lawsuit. <u>Flores v. Lucio, et al.</u>, Civil Case 1:20-193, Dkt. No. 2.

Gasca and Flores's claims both revolved around contracting COVID-19 while incarcerated at the Carrizales-Rucker Detention Center in Olmito, Texas. Given the similarity of their claims, on March 8, 2021, the Court consolidated these cases. Dkt. No. 38.

In both cases, the Defendants have filed motions to dismiss. Dkt. Nos. 10, 13, 41, 78. After reviewing the record and the relevant case law, it is recommended that the motions to dismiss be granted. Gasca and Flores have failed to state a claim upon which relief can be granted.

---

[1] As set out further below, Flores sued the same defendants as Gasca, plus an additional four defendants. For ease of reference, all of the defendants sued by either Gasca or Flores are collectively referred to as "Defendants."

**I. Background**

    **A. Factual Background**

Gasca and Flores were inmates at the Carrizales-Rucker Detention Center in Cameron County, Texas. Dkt. Nos. 1, 62. Gasca entered the jail on October 3, 2019. Dkt. No. 1, p. 11. Flores entered shortly thereafter, on October 10, 2019. Dkt. No. 62.

Gasca and Flores both raise claims regarding how the Defendants responded to the threat posed by COVID-19; Gasca also raises claims regarding jail conditions and unrelated medical protocols.

        **1. COVID-19**

Gasca states that in June 2020, he suffered from COVID-19, but that a staff member told him it was only a common cold. Dkt. No. 1, p. 15. On July 9, 2020, the inmates at the jail were tested for COVID-19. Dkt. No. 1, p. 12; Dkt. No. 62, p. 10. Gasca tested positive for COVID-19. Dkt. No. 1, p. 12.

Flores does not state the results of his July 9 test. Dkt. No. 62, p. 10. On July 25, 2020, Flores "became severely ill" with body aches, headaches, painful breathing, severe coughing, loss of taste and loss of smell. Id. Flores asserts that he was "told by medical staff and jail staff that it was the flu season" and he had "a bad case of the flu." Id.

Both Gasca and Flores have pled that jail officials did not separate the infected inmates from the uninfected inmates, but instead put all inmates in lockdown, where inmates were not allowed to leave their cell. Dkt. No. 1, p. 29; Dkt. No. 62, p. 11. Flores has pled that the lockdown order came on the advice of Dr. Alberto Almeida. Dkt. No. 62, p. 11.

Gasca and Flores have also pled that jail officials did not start handing out personal protective equipment until after inmates had tested positive for COVID. Dkt. No. 1, p. 12; Dkt. No. 62, p. 11. Gasca pled that on July 28, 2020, he asked Corporal Santibanez about obtaining new face masks because they had been using the same ones for 14 days, even though jail officials had said they would exchange the masks every seven days. Dkt. No. 1, p. 12. He alleges that Santibanez responded, "Look, I can't promise anything on the masks. I know the situation is bad, we fu---- --, we didn't do a lot of things right, it's a fu-

--- -- situation, the county messed up and we don't know what the f--- to do." Dkt. No. 1, p. 13 (dashes original).

On August 2, 2020, Gasca filed a grievance concerning the jail's COVID-19 protections (or lack thereof). Dkt. No. 1, p. 29. In the response to the grievance, Captain J. Hernandez stated that Dr. Almeida "initiated treatment for all inmates to include a vitamin regiment and/or antibiotic treatment." Dkt. No. 1, p. 29. The response also stated that inmates would not be charged monetarily for any "sick calls made for COVID treatment." Id.

Gasca continued to file grievances concerning COVID-19. On September 4, 2020, Commander Fermin Leal responded to the grievances, noting that Gasca had been given medical treatment "twice a day for the past 338 days." Dkt. No. 1, p. 40.

### 2. Conditions of Confinement

Gasca also alleges that "ants, gnats and tarantulas" were present in the jail. Dkt. No. 1, p. 11. He claims that no exterminator was ever brought in to remove the pests. Id. He asserts that "the overall condition of the facility was filthy, unclean, [and] unsanitary." Id.

### 3. Diabetic Protocol

Gasca also alleges that jail staff would test and treat diabetic inmates by having them put their finger through the food slot in the cell door to have their finger pricked for blood sugar tests. Id. He also alleges that they would administer insulin injections through the door. Id. Gasca asserts that this treatment regimen violated "bloodborne pathogen guidelines" and subjected inmates to "diseases and other bloodborne pathogens." Id. He does not claim that he or any other inmates contracted a disease as a result of this protocol. Id.

**B. Procedural History**

On September 18, 2020, Gasca filed suit against Sheriff Omar Lucio, Commander Fermin Leal, Captain Jorge Hernandez, Lieutenant Mario Vera, Lieutenant Sam Sanchez, Lieutenant John Villarreal, Corporal John Santibanez, Dr. Alberto Almeida, and nurse Dean Garza. Dkt. No. 1. As the Court reads the complaint, Gasca raises three claims: (1) the Defendants were deliberately indifferent to the dangers posed by COVID-19; (2) the

Defendants were deliberately indifferent to the presence of ants, gnats and tarantulas in the cells; and, (3) the Defendants were deliberately indifferent to the presence of bloodborne pathogens in the diabetic treatment protocol. Id.

On October 28, 2020, Lucio, Leal, Hernandez, Vera, Sanchez, Villarreal, Santibanez and Garza filed a motion to dismiss Gasca's complaint. Dkt. No. 10. They argue that Gasca did not plead any facts showing that they were deliberately indifferent and they invoked the protections of qualified immunity.

On November 5, 2020, Flores filed suit against Lucio, Leal, Hernandez, Vera, Sam Sanchez, Santibanez, Almeida, Garza as well as Miguel Sanchez, Mark Ortiz, Rogelio Gonzalez, "Unknown Rodriguez," and "Unknown Alcade." Dkt. No. 62. As the Court reads the complaint, Flores raises one overarching claim: the Defendants were deliberately indifferent to the dangers posed by COVID-19. Flores initially filed his case in the McAllen Division. Dkt. No. 1. On November 20, 2020, it was transferred to this Court. Dkt. No. 9.

On November 13, 2020, Dr. Almeida filed a motion to dismiss Gasca's complaint, arguing that Gasca pled no facts to show that he was deliberately indifferent and that he, Dr. Almeida, was entitled to the protections of qualified immunity. Dkt. No. 13.

On January 21, 2021, Lucio, Leal, Hernandez, Vera, Sam Sanchez, Santibanez, Almeida, Garza, Miguel Sanchez, Ortiz, Gonzalez, Rodriguez and Alcade filed a motion to dismiss the claims raised by Flores. Dkt. No. 78. The Defendants argue that Flores has not pled facts showing that any Defendant was deliberately indifferent; they also invoked the protections of qualified immunity. Id.

On January 22, 2021, the Defendants filed a motion to consolidate Gasca's and Flores's cases, given that both revolved around a common claim and set of facts concerning the jail's response to COVID-19. Dkt. No. 35. On March 8, 2021, the motion was granted. Dkt. No. 38.

On March 15, 2021, Dr. Almeida filed a motion to dismiss Flores's complaint, again arguing that Flores pled no facts to show that he was deliberately indifferent and that he, Dr. Almeida, was entitled to the protections of qualified immunity.

On April 27, 2011, the Court ordered Dr. Almeida to file a supplemental brief, outlining "whether he is legally entitled to invoke the protections of qualified immunity, given his employment relationship with Cameron County." Dkt. No. 51.

On May 11, 2011, Dr. Almeida filed the supplemental brief, noting that he is a private practice physician who is contracted to provide medical services and consulting for the jail. Dkt. No. 59. He argued that "[g]iven the nature of the contract, this Defendant's roles and duties, and given the lack of resources needed to be systematically organized to perform major administrative tasks," qualified immunity was available to him under existing case law.

Gasca and Flores have filed responses to the motions to dismiss, arguing that the Defendants violated their constitutional rights by allowing them to be exposed to COVID-19. Dkt. Nos. 56, 57, 58, 60. While Gasca did not specifically re-urge his claims regarding conditions of confinement and diabetic treatment protocol, the Court will assume that he has not waived the claims, given his pro se status.

## II. Applicable Law

### A. Section 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Id.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a

constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013).

### B. In Forma Pauperis

As relevant here, 28 U.S.C. § 1915 provides:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--

    (A) the allegation of poverty is untrue; or
    (B) the action or appeal—
        (i)    is frivolous or malicious;
        (ii)   fails to state a claim on which relief may be granted; or
        (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2) (emphasis added). See Hutchins v. McDaniels, 512 F.3d 193, 195 (5th Cir. 2007) (dismissal of frivolous in forma pauperis complaint is proper).

"A complaint is frivolous if it lacks an arguable basis in law or fact." Black v. Warren, 134 F.3d 732, 733 (5th Cir. 1998). Dismissal under § 1915(e)(2)(B)(ii) – for failure to state a claim upon which relief can be granted – is judged by the same standard as a motion to dismiss under FED. R. CIV. P. 12(b)(6). Rhine v. City of Mansfield, 499 Fed. App'x. 334, 335 (5th Cir. 2012) (unpubl.) (citing Black v. Warren, 134 F.3d 732, 734 (5th Cir. 1998)).

### C. Rule 12(b)(6)

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." Ferguson v. Bank of New York Mellon Corp., 802 F.3d 777, 780 (5th Cir. 2015) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not

6

permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. Id. at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." Walker v. Beaumont Indep. Sch. Dist., 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan, 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal, for failing to state a claim upon which relief can be granted, is a dismissal on the merits and with prejudice. Memon v. Allied Domecq QSR, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

### D. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The two-part test for qualified immunity requires the Court to determine: (1) whether defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. Pearson v. Callahan, 555 U.S. 223 (2009). "If [the Court] determine[s] that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity." Lytle v. Bexar Cty., Tex., 560 F.3d 404, 410 (5th Cir. 2009).

### III. Analysis

Allegations by pro se litigants must be given liberal construction to ensure that their claims are not unfairly dismissed, because of their unfamiliarity with the law. Haines v. Kerner, 404 U.S. 519, 520 (1972). That latitude, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981). Even granting Gasca and Flores this leeway, they still fail to state a claim upon which relief can be granted.

Both Gasca and Flores have alleged that jail officials failed to protect them from COVID-19. Gasca has additionally alleged that the conditions in the jail were otherwise unsanitary and the protocol for treating diabetics was unsafe. The Defendants have raised the affirmative defense of qualified immunity. The Court will address the Plaintiffs' claims and then turn to the question of whether qualified immunity is warranted. For the reasons set out below, the Plaintiffs have failed to state a claim upon which relief can be granted.

#### A. COVID-19

Gasca and Flores claim that jail officials violated their constitutional rights by not protecting them from contracting COVID-19. They have failed to state a claim upon which relief can be granted, because jail officials took constitutionally adequate measures to protect inmates from the disease.

The Court must recognize that this case arises in the context of a highly contagious airborne disease, COVID-19. The mere fact that Gasca and Flores contracted this disease – Dkt. No. 1, p. 12; Dkt. No. 62, p. 10 – does not demonstrate that jail officials violated their constitutional rights. See Shepherd v. Dallas Cty., 591 F.3d 445, 454 (5th Cir. 2009) ("Nor can the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks").

This case is not about whether jail officials did everything they could to stop the spread of COVID-19 or whether they adopted all of the guidelines promulgated by the Centers for Disease Control. This case is about whether their response to COVID-19 met the constitutional minimum, so as not to be deliberately indifferent.

"Deliberate indifference is an extremely high standard to meet." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020). Gasca and Flores must plead facts showing that jail officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that they, then, "actually drew that inference." Id.

In this case, the jail took several measures to combat COVID-19: (1) all inmates were tested in July 2020; (2) all inmates were given a vitamin regiment and/or antibiotic treatment; (3) all inmates were given masks; (4) inmates were not monetarily charged for sick calls made for COVID-19 treatment.

In the context of infectious diseases, the Fifth Circuit has held that "testing and treating inmates who were exposed to tuberculosis is enough to establish that prison officials were not deliberately indifferent to the risk of disease." Valentine v. Collier, 978 F.3d 154, 164 (5th Cir. 2020) (citing Gibbs v. Grimmette, 254 F.3d 545 (5th Cir. 2001); Wallace v. Dallas Cty., 51 F.3d 1045 (5th Cir. 1995) (per curiam)).

Jail officials in this case were not deliberately indifferent to the spread of COVID-19. They tested and treated inmates and gave out masks as protective gear. Furthermore, they responded to protect inmates from the virus.

The Plaintiffs argue that jail officials failed to use "medical isolated cells" for inmates who tested positive for COVID-19, contradicting the guidelines promulgated by the Centers for Disease Control. Dkt. No. 1, p. 14. They also claim they were not consistently given chemicals to sanitize their cells. Id. But these claims fall short. "The Eighth Amendment does not enact the CDC guidelines." Valentine, 978 F.3d at 164.

In short, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 844. Under these circumstances, the Defendants acted reasonably in the face of a contagious disease. This claim should be dismissed for failure to state a claim upon which relief can be granted.

**B. Conditions of Confinement**

Gasca also alleges that he was subjected to unsanitary conditions of confinement in the form of infestations of ants, gnats, and tarantulas. This claim is insufficient and fails to state a claim upon which relief can be granted.

There are circumstances where an infestation of pests can rise to the level of a constitutional violation. See Gates v. Cook, 376 F.3d 323, 340 (5th Cir. 2004) (affirming injunction related to "pest infestation problems"). However, the mere presence of insects and pests are not a per se constitutional violation. See Alex v. Stalder, 73 F. App'x 80 (5th Cir. 2003) (mere presence of snake, ants and spiders did not state a constitutional claim).

"In determining whether a pest infestation poses an objective risk of harm, a court should consider whether (1) the pests are present in the plaintiff's cell; (2) the pests have come in contact with the plaintiff's person or property; (3) whether the plaintiff has been bitten or stung or otherwise suffered physical or psychological harm; and (4) whether the plaintiff's property has been damaged." Amos v. Cain, 2021 WL 1080518, at *12 (N.D. Miss. Mar. 19, 2021) (citing Smith v. Dart, 803 F.3d 304, 312 (7th Cir. 2015)).

Gasca has pled that the pests were present in his cell, but he has not pled any facts showing that he came into contact with the pests or had been bitten by them or had his property been destroyed by them. See Harrison v. Smith, 83 F. App'x 630, 631 (5th Cir. 2003) (Plaintiff failed to state a claim regarding insect infestation in prison when he suffered no insect bites).

Furthermore, for this condition of confinement to amount to a cognizable claim, Gasca must plead facts showing that the Defendants acted with deliberate indifference. Johnson v. Anderson, 255 F. App'x 851, 853 (5th Cir. 2007). Again, Gasca has pled no facts showing that any Defendant was aware of the conditions and chose to ignore them. Whitlock v. Hudson, 459 F. App'x 375, 377 (5th Cir. 2012).

Accordingly, this claim should be dismissed for failure to state a claim upon which relief can be granted.

**C. Bloodborne Pathogens**

Gasca alleges that he was exposed to bloodborne pathogens as a result of how the jail tests and treats diabetic inmates. Here as well, Gasca has failed to state a claim upon which relief can be granted.

Gasca merely alleges that the protocol violated "bloodborne pathogen guidelines," thus "subjecting inmates to diseases." Dkt. No. 1, p. 11. He does not allege that he ever

became ill as a result of this protocol. Under the facts as alleges, he was exposed to the possibility of bloodborne pathogens, but was not directly harmed. Mere exposure to possible harm is not a constitutional violation, unless he can show that he was injured by that exposure. Naquin v. Larpenter, 2019 WL 3229358, at *2 (E.D. La. July 18, 2019) (collecting cases). Because he has failed to plead any facts showing injury, he has failed to state a claim upon which relief could be granted. Id. For that reason, this claim should be dismissed.

### D. Qualified Immunity

The Defendants have invoked the protections of qualified immunity. The Court must first determine whether Dr. Almeida is eligible to invoke qualified immunity, before turning to the question of whether any of the Defendants are entitled to such immunity.

### 1. Dr. Almeida

Because Dr. Almeida is a private contractor, the Court must determine whether he is eligible to invoke qualified immunity.

The Supreme Court has held that, in some instances, private individuals who provide government services as a result of a contract with the government, are entitled to invoke qualified immunity. See Filarsky v. Delia, 566 U.S. 377, 392 (2012) (a private attorney, hired to conduct an internal investigation, was entitled to invoke qualified immunity). At the same time, not all contract employees are entitled to invoke qualified immunity. See Richardson v. McKnight, 521 U.S. 399, 413 (1997) (employees of private prison corporation could not invoke qualified immunity). Thus, this a fact-intensive inquiry.

"Whether private actors may assert qualified immunity depends on (1) principles of tort immunities and defenses applicable at common law around the time of § 1983's enactment in 1871 and (2) the purposes served by granting immunity." Sanchez v. Oliver, 995 F.3d 461, 466 (5th Cir. 2021) (internal quotation marks omitted). The purposes served by granting immunity are: (1) preventing "unwarranted timidity" by government actors; (2) ensuring that "talented candidates are not deterred from public service"; and (3)

"preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." Filarsky, 566 U.S. at 390.

A key consideration is whether the private contract employee is part of a "a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." Richardson, 521 U.S. at 413. In such circumstances, courts routinely hold that the purposes served by granting immunity are not present. Id.; Sanchez, 995 F.3d at 466.

In this instance, Dr. Almeida is a private medical professional who provides medical services for the inmates as well as "consultation services" to help the jail implement proper medical practices. Dkt. No. 59-1. He has contracted directly with Cameron County and is not an employee of a private firm; rather, he is the private firm.

As to the first element – the principles of tort immunities and defenses – it is not clear that Dr. Almeida would be entitled to invoke qualified immunity. The Fifth Circuit has held that "the key to untangling whether there is a tradition of immunity applicable to private citizens in [the doctor's] position is the nature of the claims against her [or him]." Sanchez, 995 F.3d at 469. Gasca and Flores have asserted that Dr. Almeida was deliberately indifferent to the risks posed by COVID-19. This is akin to recklessness. Id. (citing Farmer v. Brennan, 511 U.S. 825, 839–40 (1994)). The Fifth Circuit explained that "there appears to have been no tradition of immunity for a doctor who acted recklessly. Sanchez, 995 F.3d at 469. Thus, "history counsels against finding a common law tradition of immunity." Id.

Even if there was a history of such a common-law tradition, the purposes served by granting immunity are not present. The "most important" concern is preventing timidity. Richardson, 521 U.S. at 409. The Courts have recognized that market forces help prevent timidity; if the defendant is aware that subpar performance can cost them the contract, they are less likely to be timid. Richardson, 521 U.S. at 410. In this case, Dr. Almeida is paid a substantial six-figure salary per year for his services, plus he can bill the County at "Medicaid rates" for all services provided at a hospital or office setting. Dkt. No. 59-1, p.

6. His contract runs for three years and can be renewed for two additional one year terms. Id. Dr. Almeida has "every incentive" to provide quality medical care, lest another doctor be given this contract. Tanner v. McMurray, 989 F.3d 860, 869 (10th Cir. 2021).

Furthermore, medical professionals are less likely to act with "unwarranted timidity" because they "face potential liability both for choosing a course of treatment that is too aggressive and for choosing a course not aggressive enough" as opposed to "police officers and prison guards, who rarely face liability for, as an example, not using enough force." Tanner, 989 F.3d at 869.

As to the concern about ensuring that talented candidates are not deterred by the threat of damages suits, this is less of a concern when dealing with medical professionals. A physician always faces the threat of a medical malpractice suit. Because the evidentiary burdens are different, it is much more difficult for a prisoner to successfully sue a prison physician than it is for a private patient under the same circumstances.

Under Texas law, the private patient merely must prove that the doctor's actions fell below the standard of care. Quijano v. U.S., 325 F.3d 564, 567 (5th Cir. 2003). As set out earlier, the prisoner must show that the doctor was deliberately indifferent, i.e. that the doctor knew of the potential risk of harm and chose not to act. Farmer, 511 U.S. at 839-40. Deliberate indifference is "an extremely high standard to meet" and medical malpractice does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). Dr. Almeida "already enjoys more protection from civil damages" in treating prisoners than he does in treating any other patient. Tanner, 989 F.3d at 870.

As to the concern about harmful distractions, this is "the least important of the three purposes" for qualified immunity. Sanchez, 995 F.3d at 472. While the lawsuits may be a distraction, Dr. Almeida is contractually required to carry insurance to protect him against such suits. Dkt. No. 59-1, p. 7. To whatever extent this factor may favor Dr. Almeida, the Supreme Court has said this factor is not "enough virtually by itself to justify providing an immunity." Richardson, 521 U.S. at 412.

Thus, the Court concludes that Dr. Almeida is not entitled to the protection of qualified immunity. This conclusion changes nothing. Because Dr. Almeida did not

violate Gasca's or Flores's constitutional rights, for which reason the claims against him should be dismissed.

### 2. Remaining Defendants

As previously noted, the remaining Defendants are entitled to qualified immunity, unless Gasca and Flores can demonstrate that: (1) the Defendants' actions violated their constitutional rights; and (2) those rights were clearly established at the time of the defendant's actions. Pearson, 555 U.S. 223. Gasca and Flores have the burden of proving that qualified immunity is inapplicable. Waganfeald v. Gusman, 674 F.3d 475, 483 (5th Cir. 2012). They have failed to meet this burden.

As to the first element, Gasca and Flores have not demonstrated that any defendant violated their constitutional rights in relation to them contracting COVID-19. Furthermore, Gasca has not shown that any defendant violated his constitutional rights concerning the presence of pests or the diabetic testing and treatment protocol. As set out earlier, the Defendants did not violate their rights on any of those grounds. Given that the Court finds that none of the Defendants violated Gasca's and Flores's constitutional rights, that finding also necessarily decides that the Defendants do not need qualified immunity. See Lytle, 560 F.3d at 410 (If "the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity."). Accordingly, the Defendants do not need qualified immunity and the immunity is inapplicable.

To the extent that the Defendants did violate Gasca's and Flores's constitutional rights concerning their exposure to COVID-19, the contours of that right were not clearly established with sufficient specificity to put the defendants on notice that their actions were not permitted. "A right is clearly established only if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Cunningham v. Castloo, 983 F.3d 185, 191 (5th Cir. 2020) (internal quotation marks omitted). Thus, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015).

As to the COVID-19 issue, the only "adequate authority" simply required officials to test and treat the inmates. Gibbs v. Grimmette, 254 F.3d 545 (5th Cir. 2001); Wallace v. Dallas Cty., 51 F.3d 1045 (5th Cir. 1995) (per curiam). There was no caselaw requiring them to do more. Thus, to whatever extent the Defendants failed to do more, such rights were not clearly established and qualified immunity would be appropriate.

## IV. Recommendation

It is recommended that the motions to dismiss filed by the Defendants be granted for failure to state a claim upon which relief can be granted. Dkt. Nos. 10, 13, 41, 78.

Furthermore, to the extent that Sheriff Omar Lucio, Commander Fermin Leal, Captain Jorge Hernandez, Lieutenant Mario Vera, Lieutenant Sam Sanchez, Lieutenant John Villarreal, Corporal John Santibanez, nurse Dean Garza, Miguel Sanchez, Mark Ortiz, Rogelio Gonzalez, "Unknown Rodriguez," and "Unknown Alcade" violated Gasca or Flores's constitutional rights, they should be given the protections of qualified immunity.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings

on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

      DONE at Brownsville, Texas on May 24, 2021.

                                                  _____
                                                  Ronald G. Morgan
                                                  United States Magistrate Judge